UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MOHAMED SALEM NANY,

        Petitioner,

      v.

TODD BLANCHE, Attorney General of
the United States, et al.,[1]

        Respondents.

_____

**DECISION AND ORDER**

1:26-CV-01187-EAW

      Petitioner Mohamed Salem Nany ("Petitioner") is a civil immigration detainee alleging that he is being detained in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), pending removal proceedings in violation of the United States Constitution. (Dkt. 1). On June 10, 2026, he filed a petition seeking relief under 28 U.S.C. § 2241 (*id.*) and also filed a motion for a temporary restraining order (Dkt. 2) to enjoin his transfer from the Western District of New York. At the time his petition was filed, Petitioner was being held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. (Dkt. 1 at ¶ 36).

      For the reasons set forth below, the petition is granted to the extent that Respondents must provide a bond hearing to Petitioner where the government bears the burden of proof

---

[1]     David Venturella is the Acting Director of ICE and is substituted in place of Todd Lyons pursuant to Federal Rule of Civil Procedure 25(d). The Clerk of Court is directed to update the docket to reflect this substitution.

by clear and convincing evidence, in accordance with the procedure outlined below, to establish that Petitioner's risk of flight or danger necessitates his detention.

## BACKGROUND

Petitioner is a citizen of Mauritania (a country in West Africa) who entered the United States on or about May 7, 2024. (Dkt. 1 at ¶¶ 26, 27). He was initially detained and released on his own recognizance on May 7, 2024, and issued a Form I-220A Order of Release on Recognizance. (*Id.* at ¶¶ 28, 29). On or about June 8, 2024, Petitioner applied for asylum. (*Id.* at ¶ 33). Petitioner is scheduled for a master hearing on March 2, 2027, in connection with his pending removal proceedings. (*Id.* at ¶ 34). In other words, Petitioner's ability to remain in this country long term likely will not be finally determined for some time.

Yet, on June 3, 2026, ICE took Petitioner into custody.[2] (*Id.* at ¶ 35). There was no change in circumstances or recent developments that led to Petitioner's detention—rather, based on information presented by Respondents' counsel at the show cause hearing, it appears he just happened to be in the wrong place at the wrong time.

Petitioner filed his habeas petition on June 10, 2026. (Dkt. 1). Almost immediately after being assigned the case, on June 11, 2026, the Court entered a Text Order directing Respondents to show cause on or before June 17, 2026, as to why the Court should not grant Petitioner a bond hearing. (Dkt. 3). The Court also temporarily restrained

---

[2]    The petition alleges that Petitioner was arrested on June 5, 2026, in Westchester, New York, but according to information presented by Respondents during the order to show cause hearing, he was actually detained on June 3, 2026, in Rochester, New York.

Respondents from transferring Petitioner outside this District pending resolution of the petition. (*Id.*). But the Court did not act fast enough—because by the time the Court's restraining order was entered, Petitioner was headed south to a detention facility in the Fifth Circuit. The Court issued an order to show cause scheduling a hearing to address whether a remedy was warranted. (Dkt. 4). In the meantime, Respondents filed a response to the Court's June 11 Text Order,[3] acknowledging that binding precedent in the Second Circuit requires the Court to grant the petition, but also arguing that the burden of proof at any bond hearing should be on Petitioner. (Dkt. 6 at 1-2).[4]

The hearing was held on June 17, 2026, and counsel for both parties appeared. (Dkt. 10). After hearing argument, the Court directed Respondents to arrange for Petitioner's return to this District and that he be provided a bond hearing in accordance with certain procedures directed by the Court. This Decision and Order memorializes the Court's reasoning in further detail.

---

[3] To the extent Respondents argue that the Court lacks jurisdiction under 8 U.S.C. § 1252, this Court rejects that argument for the same reasons it has previously done so. *See, e.g., Lieogo v. Freden*, No. 6:25-CV-06615 EAW, 2025 WL 3290694, at *2-3 (W.D.N.Y. Nov. 26, 2025).

[4] In support of this argument, Respondents contend that the district court in *da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575 (W.D.N.Y. Nov. 25, 2025), *aff'd*, 175 F.4th 61 (2d Cir. 2026), ordered a bond hearing at which the petitioner bore the burden of proof. (Dkt. 6 at 2). That is incorrect. The written decision referenced by Respondents was issued after the Petitioner had been released on bond and does not mention the burden. But a review of the docket in the case reveals that, in fact, Respondents were directed to carry the burden of proof at the bond hearing. (25-CV-6532-MAV at Dkt. 25).

**DISCUSSION**

Before July 2025, there would have been no dispute that Petitioner's detention was governed by 8 U.S.C. § 1226(a), under which he would have automatically been entitled to a bond hearing and released if he posed no danger or flight risk.  But "in July 2025, the government changed that long-settled practice, . . . and began arguing that 8 U.S.C. § 1225(b)(2)(A) prohibits the setting of bond for all inadmissible noncitizens . . . unlawfully present in the United States. . . ." *da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026).  This policy directive led to a decision from the Board of Immigration Appeals ("BIA") on September 5, 2025, in *Matter of Jonathan Javier Yajure Hurtado*, 29 L. & N. Dec. 216 (BIA), 2025 WL 2674169 (Sept. 5, 2025), holding that immigration judges lack authority to hear bond requests of noncitizens present in the United States without inspection and admission because those individuals were classified under 8 U.S.C. § 1225(b)(2) and thus subject to mandatory detention.

On April 28, 2026, the Second Circuit rejected the government's position, holding in *da Cuhna* that noncitizens present in the United States after entering without inspection and admission and who were not apprehended at or near the border at the time of entry are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), as contended by Respondents, but instead are subject to detention under § 1226(a).  At the show cause hearing, Respondents' counsel informed the Court that since *da Cunha* was decided, it is the practice of ICE officials at the BFDF to provide detainees with a Form I-286, Notice of Custody Determination, informing the individual of their right to a bond hearing.  That said, in the case of Petitioner there is no evidence that he was provided this form.  (Dkt. 8).

And it is undisputed that Petitioner was not provided with a bond hearing from the time he was detained on June 3, 2026, until he was transferred from BFDF on June 11, 2026, or at any time since his transfer outside the jurisdiction.

Complicating the analysis is the fact that Respondents transferred Petitioner to the jurisdiction of the Fifth Circuit, which unlike the Second Circuit concluded that § 1225(b) can be interpreted the way Respondents claim. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026). Respondents' counsel represented that a bus left the BFDF early in the morning on June 11, 2026, with 60 non-citizens on board heading to a detention facility in the Fifth Circuit. Along with Petitioner, there were five other non-citizens aboard the bus who had commenced habeas proceedings in this District (two in front of the undersigned and another three before United States District Judge Lawrence J. Vilardo, and according to Respondents' counsel, five of the six who had commenced habeas proceedings were subject to *da Cunha*—*i.e.*, entitled to a bond hearing under § 1226(a)). Respondents' counsel represented at the show cause hearing that the movement had nothing to do with the filing of the habeas petitions. The Court does not question the sincerity of Respondents' counsel's representations, and there is no concrete evidence at this time suggesting that these transfers are orchestrated to avoid compliance with the law as interpreted by the Second Circuit. On the other hand, the timing of the transfers is concerning.[5]

---

[5]    For instance, in addition to the three habeas petitions assigned to the undersigned that were commenced by individuals on that bus heading south on June 11, 2026, three additional cases have been assigned to the undersigned since the show cause hearing presenting a similar fact pattern wherein shortly after a habeas petition was filed and before a Text Order restraining transfer could be docketed, the petitioner was already in transit to another jurisdiction outside the Second Circuit. *See Molina Leyva v. Basuch,* 6:26-cv-

The practical reality of these transfers, as confirmed by Respondents' counsel, is that a non-citizen who is arrested in a state like New York that is governed by the Second Circuit, may be provided notice of his right to a bond hearing under § 1226(a) while in the jurisdiction of the Second Circuit, but if that bond hearing is not held and the petitioner is transferred to a jurisdiction like the Fifth Circuit, then the noncitizen will be held under § 1225(b) with no right to a bond hearing. Only with court intervention will a contrary result occur, and of course jurisdiction attaches only when a habeas petition is filed. *Wilson v. Warden Flowers, FCI Danbury*, No. 3:25-CV-01357 (VDO), 2025 WL 3719411, at *2 (D. Conn. Dec. 23, 2025) ("[H]abeas jurisdiction attaches on the initial filing for habeas relief, and a district court retains jurisdiction even when a petitioner is transferred after filing to the custody of a different custodian in a different judicial district." (quoting *Dailey v. Pullen*, No. 3:22-CV-1121 (SRU), 2023 WL 3456696, at *2 (D. Conn. May 15, 2023))); *see also Khalil v. Joyce*, 771 F. Supp. 3d 268, 279 (S.D.N.Y. 2025) ("a petitioner's relocation after a 'properly file[d]' habeas petition does not deprive a district court of jurisdiction" (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 440 (2004)).

Put another way, the undersigned has jurisdiction over only a few of the 60 individuals who were loaded on that bus on June 11. Thus, an individual can be taken into custody in a jurisdiction governed by the Second Circuit, where by operation of law and binding precedent he would be entitled to a bond hearing under § 1226(a), and yet he can

---

06645 EAW (filed June 22, 2026); *Yero v. Joyce,* 1:26-cv-01282 EAW (filed June 22, 2026); *Sanchez Gonzalez v. Bausch*, 6:26-cv-06641 EAW (filed June 19, 2026).

be moved to a different jurisdiction before that bond hearing is held and then never afforded the hearing that the Second Circuit says he should have received.

That said, this may be an issue for resolution on another date and in another case—because here, we have one petitioner who was fortunate enough to commence a habeas proceeding in this District prior to his transfer. And Respondents concede that under *da Cunha*, he is held pursuant to § 1226(a) and entitled to a bond hearing. Thus, the only two remaining issues to address are (1) whether Petitioner should be brought back to this District, and (2) what procedures should be utilized at the bond hearing.

As to the first question, the Court concludes that a return to the Western District of New York is warranted. Among other things, Petitioner's presence in the district will assist with resolution of the issues raised in the petition and provide easier access to counsel and the Court. In addition, as set forth in more detail herein, Petitioner's presence in the district will ensure that Second Circuit standards are applied to the proceeding. The Court also notes that at the time its restraining order was entered, Petitioner was still in transit, having only recently departed from the BFDF. For these reasons, return is appropriate. *See Ozturk v. Hyde*, 136 F.4th 382, 396 (2d Cir. 2025) (holding that the government failed to demonstrate that it was likely to succeed on its contention that district court lacked authority to order transfer of immigration petitioner); *Cabrera Vicente v. Mullin*, No. 26-CV-4962 (DEH), 2026 WL 1724672, at *2 (S.D.N.Y. June 11, 2026) ("In light of Petitioner's interests in participating in further proceedings before this Court and in maintaining adequate access to legal counsel through these proceedings, it is further ordered that Petitioner shall not be transferred except to a facility within this District, the

Eastern District of New York, or the District of New Jersey absent further order of this Court." (citation modified)); *Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579, 586 (W.D.N.Y. 2025) ("In particular, this Court finds that the '[p]etitioner's interests in participating in further proceedings before this Court and in maintaining adequate access to legal counsel through these proceedings' warrant an order enjoining transfer." (quoting *Perez y Perez v. Noem*, No. 25-CV-4828 (DEH), 2025 WL 1908284, at *2 (S.D.N.Y. June 13, 2025))); *see also Loc. 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1237 (2d Cir. 1992) ("Once the district court acquires jurisdiction over the subject matter of, and the parties to, the litigation, 'the All Writs Act [28 U.S.C. § 1651] authorizes a federal court to protect that jurisdiction.'").[6]

The Court further concludes as to the second question that at the bond hearing, due process requires the burden to be on the government. *See, e.g.*, *Lieogo v. Freden*, No. 6:25-CV-06615 EAW, 2025 WL 3290694, at *4-5 (W.D.N.Y. Nov. 26, 2025). "In the Second Circuit, the balancing test laid out by the Supreme Court in *Mathews v. Eldridge* . . . applies when determining the 'adequacy of process in the context of civil immigration confinement.'" *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *13 (E.D.N.Y. Oct. 6, 2025) (citation omitted). The three *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation

---

[6] Respondents have since confirmed that Petitioner has been returned to the Western District of New York. (*See* Dkt. 11). Although Petitioner filed a motion which challenged bond proceedings scheduled for Petitioner outside this jurisdiction, Respondents confirmed that Petitioner's bond hearing would be conducted in New York (Dkt. 13), and the Court denied Petitioner's motion for relief as moot (Dkt. 14).

of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S.319, 335 (1976). As noted by the Supreme Court in *Mathews*, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

This Court has expressed the view that due process requires the government to bear the burden of proving by clear and convincing evidence that detention is justified at a bond hearing under § 1226(a). *Lieogo,* 2025 WL 3290694, at *4; *Adejola v. Barr*, 408 F. Supp. 3d 284, 287 (W.D.N.Y. 2019). The Court recognizes that in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), the Second Circuit held that the petitioner's prolonged incarceration "for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process," *id.* at 855, and that the case did not require the court "to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden," *id.* at 855 n.13. But even though Petitioner has not been detained anywhere near the length of time in *Velasco Lopez*, under the circumstances here, "[g]iven the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to show a significant interest in [his] detention," *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 496 (S.D.N.Y. 2025), the Court finds that Respondents' ongoing detention of Petitioner "with no process at all, much less prior notice, no showing of changed circumstances, or opportunity to respond," *id.*, violates

- 9 -

due process and thus requires that a bond hearing be provided where the government bears the burden of proof.[7]

The Court has applied the *Mathews v. Eldridge* factors to Petitioner's situation. As for the first factor, Petitioner's private interest "is the most significant liberty interest there is—the interest in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (quoting *Velasco Lopez*, 978 F.3d at 851). The BFDF "while perhaps not akin to a maximum-security prison," is not "meaningfully different from at least a low-security penal institution for criminal detention." *Wilson v. Barr*, No. 1:19-CV-01364 EAW, 2020 WL 13554798, at *7 (W.D.N.Y. May 1, 2020). And Petitioner's liberty interest is even more heightened because the deprivation of his liberty does not stem from any criminal adjudication. *See Alvarez Ortiz*, 808 F. Supp. 3d at 599 ("[I]t is important to recognize that the deprivation of liberty that individuals detained under section 1226(a) experience is 'not the result of a criminal adjudication.' This, too, heightens [the petitioner's] interest in his liberty." (citation modified)).

---

[7]     As explained in *Alvarez Ortiz*, the holding of *Jennings v. Rodriguez*, 583 U.S. 281 (2018), does not direct otherwise. *See Alvarez Ortiz*, 808 F. Supp. 3d at 596 ("In *Jennings*, 'the Supreme Court held that [section] 1226(a) does not mandate that a clear and convincing evidence burden be placed on the government in bond hearings, [but] it left open the question of whether the Due Process Clause does.'. . . Since *Jennings*, however, 'a number of district courts have taken up the question left open by the Supreme Court, and there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified.'" (quoting *Darko v. Sessions*, 342 F. Supp. 3d 429, 434-35 (S.D.N.Y. 2018))).

Consideration of the second factor leads the Court to the conclusion that "the risk of erroneous deprivation is particularly high here." *Lopez Benitez,* 2025 WL 2371588, at *12. Petitioner's "'re-detention without' any individualized assessment such as 'any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest.'" *Id.* (quoting *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025)); *Torrez Arce v. Blanche*, No. 9:26-CV-501 (ECC), 2026 WL 1430509, at *5 (N.D.N.Y. May 21, 2026) (finding "there is a high risk of erroneous deprivation of Petitioner's liberty" where he was not given "an opportunity to post bond or argue for release on conditions"); *Hassan v. Bondi*, No. 9:26-CV-00319 (BKS), 2026 WL 891602, at *6 (N.D.N.Y. Apr. 1, 2026) ("The Court further finds that in absence of any individualized assessment or identifiable government interest regarding Petitioner's initial detention, due process requires that the Government bear the burden of demonstrating dangerousness or flight risk by clear and convincing evidence at any bond hearing."); *Gaspar v. Akshar*, No. 9:26-CV-00118 (BKS), 2026 WL 699369, at *8 (N.D.N.Y. Feb. 17, 2026) ("Petitioner did not have an opportunity to post bond or argue for release on conditions. There is no evidence that there has been any change in circumstances between the grant of deferred action and his detention. There is no evidence that anyone considered the fact that Petitioner had been granted deferred action or made any individualized assessment of whether he posed a danger to the community or flight risk. The risk of erroneous deprivation of Petitioner's liberty is therefore high."). This is underscored by Respondents' detention of Petitioner under a newly imposed interpretation of § 1225(b)(2) "that runs counter to precedent and decades of past practice," *Alvarez Ortiz*, 808 F. Supp. 3d at 600,

and which has now been squarely rejected by the Second Circuit in *da Cunha*. In other words, Respondents took Petitioner into custody without any change in circumstances or individualized assessment and have held him in custody without providing a bond hearing or due process, despite a requirement to do so in this circuit. And if Petitioner had not commenced this proceeding prior to his transfer to a facility in the Fifth Circuit, he would be kept in custody with no right to be heard on his release. This for a Petitioner who has been living in this country for two years and who was released by the government on his own recognizance when he arrived, and where there has been no claimed change in circumstances causing a revisit to that decision to initially release him. While Petitioner's detention has not been prolonged, the fact that a hearing has not been provided, or even scheduled, and with no reliable safeguards in place to ensure that Petitioner will obtain a hearing, leaves the Court to conclude that this factor weighs in favor of Petitioner.[8] This is particularly the case where, unless enjoined from doing so, the government appears to be routinely transferring detainees from facility to facility, which raises the potential and likelihood that an individual could be stripped of rights to which he or she is entitled because of the transfer from this jurisdiction. And this potential is exponentially more concerning for detainees without counsel.

As for the third factor, the Court acknowledges that the government's discretion to detain individuals under § 1226(a) "'is valid where it advances a legitimate governmental

---

[8]   Noncitizens "detained under § 1226(a) receive bond hearings at the *outset* of detention." *Jennings,* 583 U.S. at 306 (emphasis added). The question of how quickly a bond hearing must be conducted is not before the Court at this time.

purpose,' such as 'ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community.'" *Lopez Benitez*, 795 F. Supp. 3d at 495-96.  And the Court also recognizes that the Second Circuit acknowledged that the "government's interest may have initially outweighed short-term deprivation of [a petitioner's] liberty interests. . . ."  *Velasco Lopez*, 978 F.3d at 855.  But there is nothing in the record demonstrating that Petitioner presents those risks and there is no individualized assessment in the record supporting Petitioner's detention.  Rather, if it was not for a policy change reversing decades of past practice, Petitioner would not be detained.  And at best, even if Respondents had explained their interests, that means that one of the factors under the *Mathews* analysis would favor the government, but that is not enough to overcome the weight heavily in favor of Petitioner under the first and second factors.

Thus, to comply with due process, Petitioner must be afforded a bond hearing before an immigration judge ("IJ") at which Respondents shall have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence.  *See Gunes v. Warden, Broome Cnty. Corr. Facility*, No. 9:26-CV-00525 (BKS), 2026 WL 1383137, at *6 (N.D.N.Y. May 18, 2026) ("Having considered the relevant [*Mathews*] factors, the Court concludes that under the present circumstances, Petitioner is entitled under § 1226 to a prompt bond hearing consistent with due process at which the Government bears the burden of proving, by clear and convincing evidence, that [he] is a danger to the community or a flight risk." (citation modified)); *Habib v. Maldonado*, No. 26-CV-2038 (OEM), 2026 WL 1088618, at *5 (E.D.N.Y. Apr. 22, 2026) (applying *Mathews* factors to conclude that Petitioner was entitled to an individualized bond hearing pursuant to § 1226(a) detention

at which "the Government shall bear the burden of demonstrating, by clear and convincing evidence, that Petitioner is a danger to the community or a flight risk"); *Quintanilla v. Decker*, No. 21 CIV. 417 (GBD), 2021 WL 707062, at *3 (S.D.N.Y. Feb. 22, 2021) ("This Court joins the overwhelming consensus of judges in this District in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention." (citation modified)).   In deciding whether Respondents have met their burden of proof, the IJ must consider whether less-restrictive alternatives to detention can reasonably address the government's interest in Petitioner's continued detention.  In addition, if the IJ finds that Respondents have not met this burden, then in setting any bond the IJ must consider Petitioner's ability to pay and alternative conditions of release.

Accordingly, for these reasons, the petition is granted to the extent that Petitioner seeks a bond hearing, and a bond hearing shall be conducted in accordance with the following terms:

1.      Petitioner shall be granted a bond hearing before an immigration judge <u>on or before July 1, 2026</u>.  If Petitioner requests a continuance that results in a bond hearing date outside this deadline, such a continuance will comply with this Order as long as the new date falls within a reasonable time period.

2.      After considering the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court concludes that the government shall have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence.  In deciding whether the government has met its burden of proof, the IJ must consider whether less-

- 14 -

restrictive alternatives to detention can reasonably address the government's interest in Petitioner's continued detention.

3.    If the IJ finds that the government has not met its burden, then in setting any bond the IJ must consider Petitioner's ability to pay and alternative conditions of release.

4.    Thus, in order to continue Petitioner's detention after any bond hearing, the IJ must find by clear and convincing evidence and make findings that no condition or combination of conditions of release can reasonably ensure Petitioner's appearance and the safety of the community—that is, even with conditions, Petitioner presents an identified and articulable risk of flight or a threat to another person or the community.

5.    Respondents are directed to file a status update with the Court <u>on or before July 2, 2026</u>.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        June 26, 2026
              Rochester, New York

- 15 -